*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

    *v.*

JAWAN MARTIN, aka Juwain Martin,
                *Defendant-Appellant.*

No. 09-1154

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-20011-002—Sean F. Cox, District Judge.

Argued: October 13, 2011

Decided and Filed: February 10, 2012

Before: MOORE and COLE, Circuit Judges; BECKWITH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jennifer B. Flannery, JONES DAY, Cleveland, Ohio, for Appellant. Margaret Marie Smith, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Jennifer B. Flannery, JONES DAY, Cleveland, Ohio, Lauren E. Marzullo, JONES DAY, Pittsburgh, Pennsylvania, for Appellant. Margaret Marie Smith, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

    KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Jawan Martin ("Martin") appeals the judgment entered against him based on a guilty plea that he

_____

    [*]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

unsuccessfully tried to withdraw pro se at his sentencing hearing. On the second day of his trial on twenty-three counts relating to a series of bank robberies, Martin pleaded guilty to two counts of using or carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). Three months later at his sentencing hearing, when Martin was asked if he had anything to say before sentencing, he attempted to withdraw his plea. The district court denied his request from the bench. Martin appeals from the decision to enter his guilty plea and the decision to deny his motion to withdraw the guilty plea. He also alleges that ineffective assistance of counsel caused him to plead guilty when he otherwise would not have done so.

For the following reasons, we **AFFIRM** the district court's judgment. Because ineffective assistance of counsel is not clear from the record, we decline to evaluate the merits of that claim.

## I. BACKGROUND

On the second day of Martin's jury trial, during a recess, counsel for the government negotiated a plea agreement under Federal Rule of Criminal Procedure 11 ("Rule 11") with Martin's counsel. After a second recess to allow Martin time to review the agreement with his counsel, Martin's attorney informed the district court that Martin was ready to proceed with the plea. R. 184 (Plea Hr'g Tr. at 4:17-21). The district court proceeded to conduct a lengthy colloquy with Martin, confirming on numerous occasions his desire to plead guilty to the two counts set forth in the written plea agreement, his willingness to relinquish certain constitutional rights by pleading guilty, and the factual predicate for each offense in the agreement.

Because the dispute with respect to the adequacy of the colloquy relates to the mandatory minimum sentence, a few more details regarding that exchange are necessary. The district court initially read aloud each count Martin faced as set forth in the second superseding indictment. With respect to the two counts to which Martin was pleading guilty, the district court stated that each charge "carries with it a term of incarceration of five years to life, a fine of up to $250,000, as well as a supervised release term of up

to five years." *Id.* at 16:22-25, 21:7-10. Upon reading all twenty-six counts, counsel for both Martin and the government confirmed that the district court stated the charges and sentencing consequences correctly. Martin confirmed that he had discussed the charges and the sentencing consequences with his attorney and that he had no questions regarding either. *Id.* at 27:16-28:1.

The actual mandatory minimum that Martin faced was thirty-two years. The basis for the increase was that on both counts Martin admitted brandishing a weapon and the second count qualified as a subsequent offense. The written plea agreement stated thirty-two years as both the mandatory minimum and the sentence Martin was to receive. The district court informed Martin of this number when it read aloud the terms of the written plea agreement to Martin. Martin confirmed he saw the line stating, "[p]ursuant to 18 U.S.C., Section 924(c), defendant will serve a mandatory minimum sentence of 32 years," as well as the line stating, "Martin will be sentenced to 32 years imprisonment." Martin had no questions regarding either statement. *Id.* at 33:23-34:14.

Following the lengthy colloquy, the district court found that Martin's plea was made "knowingly, freely and voluntarily, and that the elements of the offenses under Count 14 and 22 of the indictment have been made out in open court here by Mr. Martin's statements." *Id.* at 44:2-6. The district court accepted Martin's guilty plea and said, "[t]he Rule 11 is taken under advisement." *Id.* at 44:7-8.

Martin's sentencing hearing was held three months later on December 23, 2008. At the beginning of the hearing, the district court "accept[ed] the Rule 11" on motion from both parties. R. 185 (Sentencing Hr'g Tr. at 4:3-4). The district court then reviewed the Presentence Report ("PSR") with the parties, and Martin made a few minor corrections on the record. *Id.* at 5:9-6:20. Martin's attorney spoke briefly regarding Martin's family support and his rough childhood. *Id.* at 7:7-9:5. When counsel finished, the district court asked if Martin had anything to say, and for the first time Martin indicated that he felt he should be able to withdraw his guilty plea:

> **Martin**: First, I want to start off and say that I feel like I should be able
> to withdraw my plea deal, because due to the fact that my lawyer told me

> it was a 32 cap.  But when I came in front of you, I found out it was a 32
> flat years.  And that wasn't explained to me.  It wasn't explained to me
> that I wouldn't be able to come back on appeal.  It wasn't explained to
> me that my PSI report will not . . . be able to help me in any kind of way.
> All these things wasn't explained to me until I got in front of you and
> signed the plea deal.  So when you did ask me, did I understand what was
> going on, at the time I was confused, because I signed some papers, so
> I'm thinking whatever I say to you didn't mean nothing.

*Id.* at 9:17-10:7.  The district court expressed confusion over what exactly Martin wanted, finally asking, "are you asking me to allow you to withdraw from the plea?  Is that what you're asking me?"  *Id.* at 15:4-6.  And Martin confirmed:  "That's what I'm asking the Court, yes, Your Honor. . . . Due to the fact that all the stipulations was not explained to me in the plea agreement."  *Id.* at 15:7-12.  The district court denied his request orally from the bench, stating that Martin's request was contrary to his prior statements, that withdrawal would prejudice the government because it accepted the plea in the middle of a complex trial, and that the court saw no basis to grant the request.  The district court also indicated respect for Martin's attorney, who remained silent during this entire time.  *Id.* at 15:13-23.

## II.  KNOWING, VOLUNTARY, AND INTELLIGENT PLEA

Martin claims that his plea was not knowing, voluntary, and intelligent, because the district court failed to comply with the requirements of Rule 11 before accepting his plea.  We review a potential violation of Rule 11 for harmless error.  Fed. R. Crim. P. 11(h); *United States v. Vonn*, 535 U.S. 55, 58 (2002); *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004).  A violation is harmless error "if it does not affect [the defendant's] substantial rights."  Fed. R. Crim. P. 11(h).  If a defendant fails timely to object to a Rule 11 violation, the standard shifts to plain error and the burden is on the defendant to show that but for the error, he would not have pleaded guilty.  *United States v. Dominguez Benitez*, 542 U.S. 74, 82-83 (2004).

Neither Martin nor his attorney ever explicitly objected to a Rule 11 violation on the record before the district court, at either the plea hearing or the sentencing hearing.  We need not decide whether Martin's statements could be construed as a proper

objection given that he was acting pro se,[1] because, even if we place the burden on the government, the record does not show any substantial impairment of Martin's rights.

## A. District Court's Compliance with Rule 11

The only error Martin alleges with respect to Rule 11 is that the district court failed to advise Martin properly of the mandatory minimum penalty that he would face upon pleading guilty. It is therefore the only error that we consider.

Rule 11(b)(1)(I) requires the district court to inform a defendant pleading guilty of any mandatory minimum penalty he would face. The parties do not dispute that the district court committed an error in stating the mandatory minimum penalty when initially reading through each count. Appellee Br. at 16 ("[T]he district court erroneously stated that the two § 924(c) counts each carried a minimum sentence of five years' imprisonment . . ."). The government seems to concede more of an error than was actually committed;[2] when the district court read the relevant two counts, it was in the context of reading all twenty-six counts as listed in the indictment. R. 184 (Plea Hr'g Tr. at 16:22-25, 21:7-10). When the district court discussed the actual terms of Martin's guilty plea, the district court correctly stated that the mandatory minimum was thirty-two years. However, because the government conceded an error in its brief, we will examine whether the mistake was harmless.

---

[1] The transcript of the sentencing hearing reveals that Martin repeatedly told the court he did not understand what was meant by the thirty-two years, even if he did not explicitly reference the requirement to be told the mandatory minimum sentence he would receive. R. 185 (Sentencing Hr'g Tr. at 9:20-21; 10:9-13; 11:18-19). His attorney was silent during this entire time. Liberally construed, these statements by a defendant acting pro se could qualify as a timely objection. *See, e.g.*, *United States v. Gray*, 581 F.3d 749, 752-53 (8th Cir. 2009) (complaint by pro se defendant to judge regarding misunderstanding of sentence was an objection to the Rule 11 violation).

[2] Indeed, the government heavily back-pedaled from this concession at oral argument, suggesting instead that the district court made no error as it was merely re-reading the indictment when the statement was made.

**B. Impairment of Martin's Substantial Rights**

For a plea to be voluntary, the defendant must understand the direct consequences of a plea, which includes the maximum and minimum sentences that may be imposed. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir.) (requiring knowledge of maximum sentence), *cert. denied*, 512 U.S. 1222 (1994); *United States v. Stubbs*, 279 F.3d 402, 411-12 (6th Cir.) (requiring knowledge of mandatory minimum sentence), *abrogated on other grounds by Harris v. United States*, 536 U.S. 545 (2002); *see also Boyd v. Yukins*, 99 F. App'x 699, 702-03 (6th Cir. 2004) (unpublished opinion). Failure to ensure that the defendant understands the mandatory minimum may therefore render a plea not voluntary, and a plea that is not voluntary is undoubtedly an impairment of a defendant's substantial rights. In *United States v. Bashara*, we held that a judge's failure to state the mandatory minimum sentence of five years did not affect the defendant's substantial rights because the totality of the circumstances suggested that the defendant understood he would be going to prison for at least five years: The defendant's guideline sentence range put him on notice that he would receive seventy to eighty-seven months of imprisonment, well above the mandatory minimum. 27 F.3d 1174, 1180 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995), *abrogated on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000).

Here, the issue is not an omission of the mandatory minimum—it is one of conflicting statements. The inquiry, however, should remain the same. The question is whether the defendant reasonably could be said to have understood the consequences of his plea regardless of any omission or misinformation provided by the district court. This case is different from *Bashara* in that the mandatory minimum here did affect Martin's sentence; indeed, Martin received the mandatory minium as his sentence. Omitting to state the mandatory minimum entirely at the colloquy would therefore have raised serious questions regarding the voluntariness of Martin's plea under our analysis in *Bashara*. However, also unlike in *Bashara*, the district court did not fail to state the mandatory minimum; rather, the court provided minimally conflicting information during an unrelated section of the colloquy. Because we cannot agree that Martin failed

to understand the consequences of his plea under the circumstances of this case, we hold that the initial misstatement was harmless error.

The only time that the district court referred expressly to Martin's overall mandatory minimum, it unequivocally stated correctly that the minimum in Martin's case was thirty-two years:

> **The Court**: Do you see where it reads, "Pursuant to 18 U.S.C., Section 924(c), defendant will serve a mandatory minimum sentence of 32 years;" do you see that?
>
> **Martin**: Yes, Your Honor.
>
> **The Court**: All right. Do you have any questions at all regarding anything contained in that statement?
>
> **Martin**: No, Your Honor.
>
> **The Court**: Let's drop down to 3(a) sentence. "(A) imprisonment. Martin will be sentenced to 32 years imprisonment." Do you see that?
>
> **Martin**: Yes, Your Honor.
>
> **The Court**: Any questions at all regarding that statement?
>
> **Martin**: No, Your Honor.
>
> **The Court**: Again, any questions at all?
>
> **Martin**: No.

R. 184 (Plea Hr'g Tr. at 33:23-34:14).

Ideally, the district court would have instructed Martin to disregard his prior statement that each of the § 924(c) counts carried "a term of incarceration of five years to life." However, the district court's failure to do so had no discernible impact on Martin's own understanding of the sentence he was to receive. Moreover, at the sentencing hearing, Martin never stated that he believed the mandatory minimum was five years for each § 924(c) count. Although Martin indicated that various "stipulations" were not thoroughly explained to him and as part of that he initially believed the thirty-two years to be a "cap" and not "flat," his statements at the sentencing hearing also make

clear that at the plea hearing itself he received clarification from the judge that his prior understanding was wrong:

> **Martin**:  [M]y lawyer told me it was a 32 cap.  *But when I came in front of you, I found out it was a 32 flat years.*
> . . .
> **Martin**:  It wasn't explained to me that my PSI report will not . . . be able to help me in any kind of way.  All these things wasn't explained to me *until I got in front of you and signed the plea deal.*
> . . .
> **Martin**:  [M]y lawyer told me it was a 32 flat.  I mean, a 32 cap.  When I got in front of you, *you told me that it was a 32 flat years*, all my rights was being taken away from me.

R. 185 (Sentencing Hr'g Tr. at 9:19-21; 9:24-10:3, 11:18-22) (emphasis added).  In this case, the record amply demonstrates that Martin adequately understood the direct consequences of his plea at the time of his plea hearing.  The initial misstatement was therefore harmless error.

### III.  WITHDRAWAL OF THE GUILTY PLEA

We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).  A defendant has no right to withdraw his guilty plea, and he has the burden of showing "a fair and just reason for requesting the withdrawal."  Rule 11(d)(2)(B); *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006).  The purpose of the rule "is to allow a hastily entered plea made with unsure heart and confused mind to be undone . . . ."  *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991), *cert. denied*, 502 U.S. 1117 (1992).

Fair and just reason is determined at the discretion of the district court, which should consider certain factors as set forth in *Bashara*, 27 F.3d at 1181: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and

background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted."

Martin argues that the district court's failure even to mention the "fair and just" standard was an abuse of discretion, and he contends that had the district court conducted the proper inquiry under *Bashara*, it would have found in favor of withdrawal. We do not agree.

## A.  Standard for Evaluating Motion to Withdraw

When a decision is left to the discretion of the district court, this court has indicated a strong preference for the district court to state its reasons to aid in appellate review. *Alexander*, 948 F.2d at 1003 ("We strongly prefer that district courts state their reasons for decisions left to their discretion . . . ."). In considering Martin's motion to withdraw his guilty plea, which we recognize was made at Martin's sentencing hearing without warning and without the assistance of counsel, the district court neither mentioned Rule 11(d) nor the "fair and just" standard. The district court also did not mention *Bashara*, by name or substance, nor did it enumerate what factors a district judge would typically consider in evaluating a motion to withdraw a plea (although the court touched briefly on prejudice to the government). R. 185 (Sentencing Hr'g Tr. at 15:16-20).

In circumstances such as Martin's, when the motion is made orally at the sentencing hearing without the assistance of his attorney, at the very least a district court should inquire more thoroughly of the defendant whether he has a fair and just reason for seeking to withdraw the guilty plea and should offer him the opportunity to confer with counsel.[3] The fact that the district court did not use the exact words "fair and just" is not as troubling as the fact that Martin was never given the opportunity to consult with his counsel, who was standing next to him silently during the whole exchange. Although

---

[3]Although the district court did at one point ask Martin the simple question "why," at no point did the court ask why Martin waited to object, why his delay should be excused, or any questions that would assist in ascertaining the relevant *Bashara* factors.

a "defendant is not entitled to an evidentiary hearing or the withdrawal of her plea as a matter of right," *United States v. Woods*, 554 F.3d 611, 613 (6th Cir. 2009), the district court must take some steps to ensure that it has the information necessary to conduct a proper inquiry into the *Bashara* factors. When, as here, the defendant's counsel makes no apparent effort to advise his client, delaying consideration of the pro se motion to withdraw the guilty plea in order to allow consultation, briefing, or an evidentiary hearing would be the preferable course.

Even when a district court insufficiently articulates the reason behind a decision not to vacate a plea, however, we will not hold that the district court per se committed an abuse of discretion if the record does not support a finding of a fair and just reason to withdraw. *Alexander*, 948 F.3d at 1003 (affirming denial of motion to vacate plea because record did not support fair and just reason despite absence of explanation by district court for denial). We therefore review the factors set forth in *Bashara* to determine in light of the record and the arguments of counsel on appeal whether the district court abused its discretion in denying Martin's motion to withdraw his guilty plea.

**B. Analysis of *Bashara* Factors**

Evaluating each of the *Bashara* factors, we conclude that the balance overwhelmingly favors denying a motion to withdraw a plea under these circumstances.[4]

*1. Length of delay.* Martin waited ninety-five days before attempting to withdraw his plea. We have consistently found shorter periods to be excessive. *See United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir.) (seventy-seven days), *cert. denied*, 528 U.S. 1033 (1999); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.) (sixty-

---

[4]Martin also takes issue with the district court's reference to extraneous issues, such as the respect for his counsel, in denying the motion to withdraw. Martin, however, offers no support for his claim that it was "improper" to do so. Because the *Bashara* factors are non-exhaustive, the district court's consideration of additional factors is not an abuse of discretion. *See United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) ("The factors listed are a general, non-exclusive list and no one factor is controlling.").

seven days), *cert. denied*, 519 U.S. 973 (1996); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-six days).  This factor weighs against withdrawal.

*2. Reason for failing to move for withdrawal earlier.*  Martin claims on appeal, without citation, that the length of his delay was due to his inability to contact counsel prior to his sentencing hearing "despite his attempts."  Appellant Br. at 23.  A lack of communication with counsel alone, however, is insufficient justification for a delay, particularly when defense counsel was unaware of the pro se efforts of his client to withdraw his plea.[5]  The record suggests that Martin's counsel had no prior notice of Martin's attempt pro se to move to withdraw his plea, as counsel spoke for several minutes at the sentencing hearing consistent with Martin's position at the plea hearing prior to Martin's attempt to withdraw the plea.  R. 185 (Sentencing Hr'g Tr. at 7:7-9:5).  Although Martin may ultimately have a claim for ineffective assistance of counsel that could be developed in a proceeding brought under 28 U.S.C. § 2255, this factor here also weighs against withdrawal.

*3. Innocence.*  Martin suggests that he "maintained his innocence" up until the plea hearing.  Appellant Br. at 23.  Since the plea hearing, however, Martin has expressly reaffirmed his guilt on numerous occasions.  R. 185 (Sentencing Hr'g Tr. at 10:18-19) ("And I'm not saying that I'm innocent.  I'm guilty of what I've done . . . .").  In seeking withdrawal of the plea, Martin's only concern seemed to be with the length of the sentence and not the adjudication of guilt.  Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal.  *See, e.g., United States v. Ford*, No. 93-6095, 1994 WL 567593, at *2 (6th Cir. Oct. 14, 1994) (unpublished opinion) ("[Defendant] admitted the factual basis for the plea and admitted three times, under oath, that he was guilty of both counts of the indictment.").  This factor weighs against withdrawal.

---

[5]Two of our unpublished opinions have already reached this conclusion.  *United States v. McIntyre,* 381 F. App'x 535, 539-40 (6th Cir. 2010) (unpublished opinion); *United States v. Mise*, 27 F. App'x 408, 413 (6th Cir. 2001) (unpublished opinion).

*4. Circumstances underlying entry of guilty plea.*  Martin claims that he felt rushed into signing the plea agreement before he fully understood its terms.  The district court, however, advised Martin at length regarding the rights that he was giving up should he plead guilty.  Martin on numerous occasions affirmed that he understood what he was pleading to and what he was giving up as a result.  He also indicated his satisfaction with the advice of counsel.  *See Ellis*, 470 F.3d at 285 (considering district court's comments at plea colloquy and defendant's articulation of his understanding as indicating circumstances surrounding plea were proper).  The suggestion that Martin may have had only twelve minutes to review the agreement itself while at counsel table in open court is cause for concern;[6] however, the district court thoroughly reviewed the terms of the plea agreement with Martin, who expressed no confusion and affirmed his understanding of the agreement and specifically of the thirty-two-year mandatory minimum.  Even if Martin felt that his words to the judge did not matter and that the agreement would govern, R. 185 (Sentencing Hr'g Tr. at 10:4-7), the agreement unequivocally provides a thirty-two-year mandatory minimum sentence.  Additionally, Martin's jury trial started on September 18, 2008, the day before the plea was taken. Martin was facing a 205-year sentence for twenty-six counts relating to a series of bank robberies, all of his co-defendants had recently entered into cooperation agreements with the government to testify against Martin at trial, and he had just heard the government's opening statements before agreeing to plead guilty to two counts.  This factor is at best neutral for Martin.

*5. Defendant's nature and background.*  Although elements of Martin's background were difficult, his circumstances do not suggest an inability to understand the proceedings.  He has some high school education, speaks English, and over the course of a lengthy colloquy regularly affirmed his understanding of the proceedings. Martin claims that he is "not that smart," R. 185 (Sentencing Hr'g Tr. at 10:8), but there is no evidence of any mental or learning disability that would impair his understanding.

---

[6]The record does not indicate whether Martin first heard of the proposed thirty-two-year mandatory minimum on September 19, 2008, at 3:50 p.m., as he claims, or sometime earlier, as the government claims.

He works occasionally as a music producer, a job that presumably requires some degree of communication with and comprehension of others. The record more strongly suggests that there is nothing in his nature and background that would prevent him from understanding to what he was pleading. This factor also weighs against withdrawal.

6. *Defendant's prior experience with criminal justice system.* Martin has only one prior encounter with the criminal justice system, and he has no experience with federal court or the federal sentencing guidelines. His prior conviction for carrying a concealed weapon was in state court, and the penalty consisted of a monetary fine and probation. This factor weighs in favor of withdrawal.

7. *Prejudice to government if plea withdrawn.* The government need not establish prejudice if the defendant has failed to show cause to withdraw a plea. *Spencer*, 836 F.2d at 240. Here, however, prejudice has been established. At the time of Martin's plea, the government was prepared for (and had started) what was shaping up to be a lengthy trial. Martin's plea ended the government's preparation for trial, which the government would have to begin anew now several years later should he be allowed to withdraw. *Bazzi*, 94 F.3d at 1027 (requiring government to restart trial preparation would be prejudicial). The district court also found that allowing Martin to withdraw would be prejudicial to the government. R. 185 (Sentencing Hr'g Tr. at 15:16-20). Although the difficulties of finding witnesses against Martin would be minimized considering that his co-defendants all pleaded guilty and are serving imprisonment, the amount of time and effort it would take to restart a trial and the effect of delay on individuals' memories would be prejudicial. This factor weighs against withdrawal.

**C. Fair and Just Reason for Withdrawal of the Plea**

Of all the *Bashara* factors, five weigh against withdrawal of Martin's guilty plea, one is neutral, and one weighs in favor. The one in favor of withdrawal—the defendant's prior experience with the criminal system—is not particularly compelling in light of the strength of the factors weighing against withdrawal, including his lack of a valid reason for withdrawal and the potential prejudice to the government. We hold that the district court did not abuse its discretion in denying Martin's motion to withdraw

his guilty plea given the circumstances of this case. As set forth above, we would normally expect the district court to delay consideration of a pro se motion to withdraw made without warning until the defendant has at least an adequate opportunity to consult with counsel. However, we do not believe a remand for such additional consideration is necessary in light of the record and arguments in this case.

### IV.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

We will review on direct appeal claims of ineffective assistance of counsel only if trial counsel's ineffectiveness is apparent from the record. *Valdez*, 362 F.3d at 913-14. Here, Martin's attorney may have provided ineffective assistance, but the record lacks sufficient information for us to make a determination at this point. Martin's claim is therefore better suited for a post-conviction proceeding under 28 U.S.C. § 2255 so that the record may be adequately developed. *See id.* (declining to review ineffective assistance claim on direct appeal from district court's denial of motion to withdraw a guilty plea). We therefore decline to evaluate at this time the merits of Martin's claim of ineffective assistance of counsel.

### V.  CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's judgment.