**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0604n.06

**No. 17-3043**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 01, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES of AMERICA,

      Plaintiff-Appellee,

v.

GREGORY BLANDER,

      Defendant-Appellant.

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

**BEFORE:** **CLAY, COOK, and WHITE, Circuit Judges.**

**CLAY, Circuit Judge.** Defendant Gregory Blander appeals the district court's order denying his motion to withdraw his guilty plea to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, we hold that the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea, and we **AFFIRM**.

**BACKGROUND**

On February 28, 2015, Akron police officers were working off-duty security at the Ace of Spades nightclub when they were alerted that a suspect had a gun and was refusing to leave the bar. As described in the presentence report, Defendant had been involved in a verbal altercation with another patron when he pulled out a .380 caliber Ruger and placed it on the bar. Upon entering the bar and taking Defendant into custody, officers found that Defendant had a .380 caliber Ruger pistol in his right front pocket. The gun was loaded and had an obliterated

serial number. Defendant told police his name was Dominic Donaldson, and he was booked into the jail under that name.

When officers interviewed Defendant that night, he again stated that his name was Dominic Donaldson. He said that he was still intoxicated and did not remember what had happened. After several requests for Defendant's correct name, he admitted that his name was Gregory Blander and told the police, "All y'all got on me is that pistol."

On April 28, 2015, Defendant was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After initially pleading not guilty, on February 26, 2016, Defendant pleaded guilty to the indictment without a plea agreement. At the change of plea hearing, the district court asked him a number of questions to insure that he understood the charges against him as well as the constitutional rights he was waiving by pleading guilty to the indictment. Defendant said that he was 34 years old, that he had obtained his GED, and that he fully understood English. He said that he had not been treated for any mental or psychiatric conditions in the past 12 months and that he was not currently under the influence of alcohol, drugs, or other judgment-impairing medications. Defense counsel said that he believed Defendant was competent to enter a guilty plea.

The court explained to Defendant the nature of the charged crime, informed him about the possible statutory maximum sentence that could be imposed, and explained the concept of supervised release. Defendant said he understood. Defendant said that he had carefully discussed his decision to plead guilty with counsel, that he had been given the opportunity to ask questions, that he had discussed the evidence against him as well as his possible defenses, and that he was satisfied with his counsel's representation. Defendant further confirmed that he had not been threatened or pressured into entering his guilty plea.

The court explained to Defendant his constitutional right to a jury trial, the presumption of innocence, the government's burden of proof, his right to call witnesses, and his right to decline to testify. Defendant again stated that he fully understood the rights he was giving up by pleading guilty. The court then explained the effect of entering a guilty plea:

> If I accept your guilty plea, we won't have any of that, no trial, witnesses, documents. You'll be found guilty. You'll come back in about three months for sentencing, and you won't be able to say: Gee, I made a mistake. I want a trial. Do you understand that?

(R. 49, PID 224). Defendant said that he did.

The court then asked the government to place on the record the evidence it believed that it could prove to a jury beyond a reasonable doubt. The court told Defendant that it would then ask him "if that's what you did." (*Id.* at 225.) The government recounted its version of the sequence of events, and the court then had the following exchange with Defendant:

> THE COURT: All right, Mr. Blander. Is that what you did in this case?
> THE DEFENDANT: Your Honor, I had the firearm that night, sir.
> THE COURT: I'm sorry. What?
> THE DEFENDANT: I said yes, I did have a gun that night.
> THE COURT: All right. And you knew you had the gun?
> THE DEFENDANT: Yes, I did.
> THE COURT: And you agree or you are not contesting that the gun traveled in interstate commerce?
> THE DEFENDANT: No, I'm not, sir.

(*Id.* at 226.) The court accepted Defendant's guilty plea and ordered that the Probation Department prepare a presentence investigation report.

That was in February 2016. It was not until December 2016 that Defendant alleged for the first time that the gun did not belong to him. Defendant claimed that he took the gun from a friend "when his friend pulled out the firearm in the nightclub during a verbal argument." (R. 42, PID 158.) He claimed that he did so "to help secure the situation." (*Id.*)

3

On December 2, 2016, Defendant made this argument at his sentencing hearing. The court did not find his version of events credible and noted that Defendant did not tell this story when he pleaded guilty. But the court nonetheless said that it was "uncomfortable" proceeding with sentencing because Defendant's new series of events presented a possible justification defense. The court decided to postpone sentencing and give Defendant the opportunity to file a written motion to withdraw his guilty plea, which Defendant did on December 16, 2016. On December 28, 2016, the government filed a response. And after consideration of the parties' briefing, the court denied Defendant's motion to withdraw at the second sentencing hearing on January 3, 2017. The district court explained its decision as follows:

> First, these motions are clearly within the Court's discretion, but they are granted rarely. That's the standard in the Sixth Circuit. These circumstances should seldom arise.
>
> First and foremost, a very significant amount of time has withdrawn. I had not seen a case where -- you know, this is nine, ten months. The Sixth Circuit has said that even one or two months is -- is an unusually long period. And there is no good reason for this motion to have been filed so long after the change of plea hearing, and the defendant has not given -- given a reason why – why it took so long.
>
> Third, the defendant has not maintained his innocence at all, at least in front of the Court. I'm not privy to any discussions . . . you may have had with [your attorney], those are privileged, but in terms of -- of what you ever said whenever you've been in court or any filings, you've never challenged the Indictment or maintained your innocence, and you certainly did not do so at your change of plea hearing.
>
> And I reviewed the -- the transcript of the change of plea hearing, and there was no plea agreement, so what I did was asked [the prosecutor] to place on the record the evidence she believed she could prove beyond a reasonable doubt, and I asked you at the end if that's what you did, and you said yes.
>
> And one of the things she recited was that at 4:30 a.m., an individual working security at the club informed the defendant that it was time to leave the establishment. That same individual observed the defendant and the third man engaging in an argument. The individual observed the defendant remove a gun from his coat pocket and place it on the bar underneath his hand.

And you didn't refute any of that evidence, and there's nothing in that that suggests that the gun was -- was on someone else's person and then you took it and put it in your -- your coat. In fact, the witness saw you remove it from your coat and place it on the bar – bar stand.

Another factor is that you are very experienced in the criminal justice system. Courts have indicated more leniency with a defendant who's -- that this is his or her first time going through things. You've been through it multiple times.

(R.67, PID 310-12.)

The court then proceeded to sentencing. The court determined that—even with a three-level acceptance-of-responsibility reduction—Defendant had a total offense level of 25 and a criminal history category of VI, yielding an advisory guidelines range of 110 to 137 months. The statutory maximum sentence for Defendant's offense was 120 months, so the court adjusted his guidelines range to 110 to 120 months. At the request of defense counsel, the court then applied a downward variance for Defendant's untreated mental illness and his acceptance of responsibility, resulting in a 96-month sentence followed by a three-year term of supervised release.

Defendant now appeals the district court's denial of his motion to withdraw his guilty plea.

## DISCUSSION

### I.    Standard of Review

A district court's denial of a defendant's motion to withdraw a plea is reviewed for an abuse of discretion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (citing *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir. 1991)). "A district court abuses its discretion where 'it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)). "This Court may

also find an abuse of discretion if the district court 'committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quoting *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003)).

## II.    Analysis

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a guilty plea before sentencing if he or she "can show a fair and just reason for requesting the withdrawal." "'The withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'" *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir. 1991) (quoting *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987)). In determining whether a defendant has shown a "fair and just reason," the court considers the totality of the circumstances, including the following factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings: (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Catchings*, 708 F.3d 710, 717–18 (6th Cir. 2013) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded in part by statute as stated in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)). "The factors listed are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027. "The relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the motion to withdraw.'" *Haygood*, 549 F.3d at 1052 (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)). "This rule is designed 'to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes

he made a bad choice in pleading guilty.'" *Ellis*, 470 F.3d at 280–81 (quoting. *Alexander*, 948 F.2d at 1004).

Defendant contends that the district court committed six errors in its application of the *Bashara* factors: (1) it placed inordinate weight on the delay between Defendant's guilty plea and his withdrawal; (2) it failed to properly consider Defendant's stated reason for that delay; (3) it erroneously concluded that Defendant had failed to maintain his innocence based on the mistaken impression that he assented to the government's version of events at his change-of-plea hearing; (4) it improperly concluded that Defendant's prior experience with the criminal justice system weighed against granting his motion because he has prior experience with only the *state* criminal justice system; (5) it failed to consider other relevant factors, including the circumstances surrounding his plea, his nature and background, and the lack of prejudice to the government; and (6) it applied an inappropriately high standard to Defendant's motion to withdraw.

Consideration of the *Bashara* factors demonstrates that the district court did not abuse its discretion and supports affirming the district court's denial of the motion to withdraw the guilty plea. We turn to each of Defendant's claims of error in turn.

### 1. The district court did not place inordinate weight on the delay factor.

Defendant argues that the district court placed inordinate weight on the delay between Defendant's guilty plea and his withdrawal. Specifically, the court reasoned that the first *Bashara* factor weighed against Defendant because "a very significant amount of time has [elapsed]" between Defendant's guilty plea and its withdrawal. The court explained, "I had [sic] not seen a case where – you know, this is nine, ten months. The Sixth Circuit has said that even one or two months is – is an unusually long period." Defendant asserts that "[t]he district court erred in relying too heavily on this single factor," instead of weighing it as one factor in the

totality of the circumstances. But Defendant offers nothing to support this assertion. Indeed, the court indicated that it weighed multiple factors in reaching its conclusion, including the absence of a valid reason for Defendant's failure to move for withdrawal earlier, the fact that Defendant had not maintained that he was innocent, the circumstances underlying the entry of the guilty plea, and Defendant's prior experience in the criminal justice system. As the district court concluded: "So for all of those factors, I am denying your motion to withdraw your guilty plea." (*Id.* at 312.)

The district court also applied the law to correctly conclude that the factor of delay weighed against Defendant: "'The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *Ellis*, 470 F.3d at 281 (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)). Here, Defendant entered a guilty plea on February 26, 2016, and did not move to withdraw it until December 16, 2016. Thus, approximately nine-and-a-half months elapsed between his plea and his attempt to withdraw. This Court has found delays of significantly less time to weigh against granting a defendant's motion to withdraw. *See, e.g.*, *United States v. Giorgio*, 802 F.3d 845, 848 (6th Cir. 2015) (118 days); *United States v. Cinnamon*, 112 F. App'x 415, 418–19 (6th Cir. 2004) (90 days); *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (75 days); *Baez*, 87 F.3d at 808 (67 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days). Moreover, whether or not this factor alone could justify the court's decision, *see Valdez*, 362 F.3d at 913 ("Valdez's unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"), the court clearly weighed this factor as one among others. Thus, the district court was entitled to weigh the prolonged delay against Defendant.

**2. The district court properly considered Defendant's stated reason for his delay.**

Defendant next argues that the district court erred by concluding that "there [wa]s no good reason for this motion to have been filed so long after the change of plea hearing, and the defendant has not given – given a reason why – why it took so long." Defendant places much emphasis on the fact that between the time he entered his plea and moved to withdraw, the district court granted six requests for a continuance of the sentencing hearing (one from the government and five from Defendant). Therefore, Defendant concludes, he "made his request to withdraw his plea at his first appearance in court after his plea." That may well be true, but the district court correctly determined that it did not matter.[1] Defendant's postponed sentencing date did not prevent him from filing a motion in the intervening months. Defendant did not need to appear in court to file a motion to withdraw his plea. Defendant also does not claim that his access to his attorney was limited during this time, nor does he cite any compelling reason explaining why he waited nearly ten months to move for withdrawal of his guilty plea. The delays to which Defendant refers pertained only to the date of the sentencing hearing and do not justify his delay in filing the motion.

Moreover, Defendant's justification defense, which was the basis of his motion, was not newly discovered. Defendant's own motion to withdraw indicates that before he pleaded guilty, his counsel advised him that "his recitation of events could potentially satisfy a 'justification' defense; but it would be a difficult defense to present based upon the surrounding circumstances," and it was on this basis that Defendant concluded that his "best course of action was to enter a guilty plea without an agreement with the government, and to argue for a below

---

[1] "THE COURT: I mean, I know, but the issue is – the delay in moving to withdraw the plea. That's – that's the issue. I'm not – you know, the fact that the sentencing was delayed for a good reason, no one – no one's quarreling with that." (R. 67, PID 305.)

the guidelines sentence based upon variance arguments."[2] This is precisely the kind of "tactical decision" and reconsideration that the caselaw forbids. *See Ellis*, 470 F.3d at 280–81.

### 3. The district court properly concluded that Defendant had failed to maintain his innocence throughout the proceedings.

The district court found that Defendant "has not maintained his innocence at all," and therefore this factor also weighed against granting his motion to withdraw his guilty plea. Defendant asserts that this was error. Defendant's argument rests on the district court's mistaken finding that he assented to the government's recitation of facts at the change of plea hearing. Although we agree that this was an error, such error was harmless because the district court had ample additional reasons to conclude that Defendant had failed to maintain his innocence.

As recounted above, the district court had an exchange with Defendant after the government presented its case. The court then asked Defendant if that was what he did. At the sentencing hearing, the district court said that Defendant's response to this question was "yes." That is incorrect. What Defendant actually said was, "Your Honor, I had the firearm that night, sir" and "I said yes, I did have a gun that night." Thus, the facts confirm Defendant's account of the exchange, *i.e*, that he "only admitted the elements of the crime."

Nonetheless, the district court's error was harmless. The district court also noted that Defendant failed to object or correct the facts as stated at his plea hearing, failed to correct or object to similar facts in the Presentence Investigation Report, and did not raise his justification defense until, at the earliest, December 2, 2016.[3] Thus, even without Defendant's assent to the

---

[2] Defense counsel reiterated this point at the second sentencing hearing: "And in weighing his option [of raising his justification defense], Mr. Blander was weighing his – his chances at trial, compared to potentially what could happen at sentencing…." (R. 67, PID 306.) Defense counsel also stated that, "the more [Defendant] thought about it, the more that he felt that he had a defense to the charges…." (*Id.* at 307.)

[3] Moreover, Defendant's contention that he was unaware that he had the opportunity to explain why he had the gun is contradicted by his own motion to withdraw. There, he admits that he knew, before he pleaded guilty, that he

10

government's account, the district court did not err in concluding from the remaining facts that Defendant had not asserted or maintained his innocence.

### 4. The district court properly concluded that Defendant's prior experience with the criminal justice system weighed against granting his motion.

The court concluded that the sixth *Bashara* factor—the degree of a defendant's prior experience with the criminal justice system—weighed against granting Defendant's motion. Specifically, the court said, "Courts have indicated more leniency with a defendant who's – that this is his or her first time going through things. You've been through it multiple times." Defendant argues that the district court erred in reaching this determination because Defendant has prior experience with the *state* criminal justice system, not the federal one. Defendant cites no caselaw to support drawing such a distinction, and his argument is very thin. He claims that his "prior experience with the state criminal justice system does not mean he understood the process for withdrawing his guilty plea in federal court." But Defendant has extensive experience with the criminal justice systems in Ohio and Michigan. And both Ohio and Michigan have procedures similar to the federal system for the withdrawal of guilty pleas. Ohio Crim R 32.1; MCR 6.310. Under both rules, as in federal court, a defendant may withdraw his plea by making a motion to withdraw before a sentence is imposed. There is simply no reason to believe that Defendant's guilty plea—or his failure to withdraw it—stemmed from a lack of familiarity with the federal criminal justice system, especially when he has admitted that he had considered and rejected the option of asserting his defense before pleading guilty.

---

could raise a justification defense but decided, after consultation with counsel, that it "would be a difficult defense to present based upon the surrounding circumstances." (R. 46, PID 198.)

**5. The remaining *Bashara* factors do not support granting Defendant's motion to withdraw.**

Defendant's next claim of error is something of a catch-all. He claims that "[t]he court further erred in failing to consider other relevant factors including: the circumstances surrounding his plea, his nature and background, and the fact that the government would not suffer any prejudice if his motion was granted."

First, he argues that, since he received no benefit for his guilty plea, the court should have considered "whether he fully understood the options before him [when he decided to plead guilty]." But Defendant did receive a benefit by pleading guilty: namely, his acceptance of responsibility was one of the factors the district court considered when it decided to apply a downward variance, which was exactly what Defendant wanted. Defendant further argues that this error was compounded by evidence of his mental illness and his extensive history of marijuana use.[4] But there is simply no evidence that Defendant's plea was entered in any way other than knowingly or voluntarily. The district court properly advised Defendant of his constitutional rights at the plea hearing. Defendant clearly stated that he was entering the guilty plea knowingly and voluntarily. He indicated that he benefitted from the assistance of competent counsel and said that he was satisfied with his lawyer's representation. In short, the record indicates that Defendant understood what he was doing and the constitutional rights he was waiving when he entered the guilty plea. And defense counsel said that he believed Defendant was competent to enter a guilty plea. The circumstances surrounding the entry of the guilty plea—even in combination with his mental illness and drug-use—support affirming the district court's denial of the motion to withdraw the plea.

---

[4] Defendant also argues that the court should have considered his "significant physical health issues," but it is unclear what possible role they could play in this analysis.

Next, he argues that the court should have considered the lack of prejudice that allowing him to withdraw his plea would have on the government. But the law is well-settled that the trial court need not consider the seventh *Bashara* factor unless and until the defendant establishes a fair and just reason for permitting withdrawal. *Ellis*, 470 F.3d at 285-86 (citing *Spencer*, 836 F.2d at 240).

Even though the district court did not explicitly address those factors, it did say that it had "reviewed carefully the motion and the response," and such a review would have entailed considering them. Moreover, since those factors weigh against granting the motion, even if the district court erred by failing to consider them, such an error would be harmless.

**6. The district court applied the correct legal standard to decide the motion to withdraw.**

Defendant's last argument is that the court, instead of just weighing the *Bashara* factors, "effectively applied a presumption against Mr. Blander's motion to withdraw his plea." As evidence, Defendant points to the district court's statement that "these motions are clearly within the Court's discretion, but they are rarely granted. That's the standard in the Sixth Circuit. These circumstances should seldom arise."[5] Given that the court proceeded to apply the *Bashara* factors without giving additional weight to the government's position, the argument is without merit. Moreover, the district court was correct on the law: "'When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise.'" *Ellis*, 470 F.3d at 280 (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)). "The 'withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly

---

[5] Even defense counsel agreed that "in practice, they are very seldom granted."

administration of justice.'" *Id.* (quoting *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993)).

## CONCLUSION

Because we find that the district court did not abuse its discretion in the application of the *Bashara* factors, we **AFFIRM** the district court's order denying Defendant's motion to withdraw his guilty plea.